| Last Day to Object to Sales Procedures Order: | October 19, 2011 @ 4:00 p.m. |
|---|---|
| Hearing to Approve Sales Procedures Order: | October 26, 2011 @ 9:30 a.m. |
| Sale: | November 30, 2011 @ 11:00 a.m. |
| Last Day to Object to Sale Confirmation: | December 7, 2011 @ 4:00 p.m. |
| Sale Confirmation Hearing Date: | December 14, 2011 @ 9:30 a.m. |

GAZES LLC
32 Avenue of the Americas, 27th Floor
New York, New York 10013
(212) 765-9000
Ian J. Gazes, Esq.
Jayson Jarushewsky, Esq.
*Attorneys for the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

MRU HOLDINGS, INC.

                      Debtor.
------------------------------------------------------------x

Chapter 7

Case No. 09-10530 (AJG)

**TRUSTEE'S MOTION FOR ORDER (i) AUTHORIZING
AND APPROVING THE SALE OF THE CONDOMINUIM UNIT
LOCATED AT 359 VARICK STREET, UNIT CO2, JERSEY CITY,
NEW JERSEY SUBJECT TO HIGHER AND BETTER OFFERS,
(ii) APPROVING SALES PROCEDURES ORDER AND THE FORM
AND MANNER OF NOTICE OF THE SALE, AND (iii) SCHEDULING
<u>A HEARING TO CONFIRM THE SALE OF THE PROPERTY</u>**

TO:    HONORABLE ARTHUR J. GONZALEZ
         CHIEF UNITED STATES BANKRUPTCY JUDGE

Upon this motion dated September 30, 2011 (the "Motion") of Ian J. Gazes, the chapter 7 trustee (the "Trustee") of the estate of MRU Holdings, Inc. (the "Debtor" or "MRU"), by and through his counsel, Gazes LLC, for an (a) order (the " Sales Procedures Order") substantially in the form attached as Exhibit <u>A</u> (i) fixing a hearing date (the "Sale Confirmation Hearing") to confirm the Trustee's sale of the estate's right, title and interest in that certain condominium located

at 359 Varick Street, Unit CO2, Jersey City, New Jersey (the "Property") to Elaine Lok ("Lok") subject to higher and better offers, (ii) approving the bid terms ("Bid Terms") substantially in the form annexed hereto as Exhibit B, and (iii) designating the form and manner of the Notice of Sale substantially in the form annexed hereto as Exhibit C; and (b) order (the "Sales Confirmation Order"), substantially in the form attached as Exhibit D, approving the sale of the Property to the highest and best offeror, the Trustee respectfully represents as follows:

## SUMMARY OF APPLICATION

1. Pursuant to the Notice of Sale, the Trustee will conduct a sale of the estate's right, title and interest in and to the Property on November 30, 2011 at 11:00 a.m. to Lok for the sum of $100,000.00 subject to higher and better offers. By this Application, the Trustee seeks entry of the Sale Procedure Order (a) approving the form and manner of service of the Notice of Sale and the Bid Terms, and (b) scheduling a Sale Confirmation Hearing on December 14, 2011 at 9:30 am at which time the Court will consider the approval of (i) the sale of the Property to the highest and best offeror, (ii) the Agreement of Sale (the "Purchase Agreement") in the form attached hereto as Exhibit E, and (C) payment of liens, claims and encumbrances that attach to the Property and expenses related to the sale of the Property other than the Trustee's professionals' fees and expenses arising by reason of the sale, which are subject to further application to this Court.

## JURISDICTION, VENUE, AND PREDICATE

2. This Court has jurisdiction over this matter under sections 157(a) (b)(1) and 1334(b) of title 28 of the United States Code, 28 U.S.C. §§ 157(a), (b)(1), and 1334(b), and the standing referral Order of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). Consideration of this Motion is a core proceeding

under sections 157(b) (2) (A), (N), and (O) of title 28 of the United States Code. 28 U.S.C. §§ 157(b) (2) (A), (N), and (O).

3. Venue of this case and this Motion in this district is proper under section 1408 of title 28 of the United States Code. 28 U.S.C. §1408.

4. The statutory provisions governing the relief requested in this Motion are sections 105 and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Fed. R. Bankr. P. 2002 and 6004, Rule 6004-1 of the Local Rules (the "Local Rules") of the United States Bankruptcy Court for the Southern District of New York, LBR 6004-1, and General Order M-331 of this Court re: Adoption of Guidelines for the Conduct of Property Sales.

## BACKGROUND

5. On February 6, 2009, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

6. On February 9, 2009, the United States Trustee appointed the Trustee as the interim chapter 7 trustee in this case. The Trustee is now duly qualified as the permanent chapter 7 trustee pursuant to section 702(d) of the Bankruptcy Code. 11 U.S.C. § 702(d).

7. Prior to the filing of its chapter 7 petition, the Debtor was a New York-based financial services company that specialized in higher education financing products. Its primary brand was MyRichUncle.

**MRU's Operations**

8. In June 1999, co-founders Raza Khan and Vishal Garg incorporated iempower Inc. ("iempower") to offer an auction-exchange program for individuals to sell shares in their future income to investors. In the spring 2001, iempower narrowed its focus to education

investments. Khan and Garg saw the concept of education investments as that of having a rich uncle, and thus the brand name MyRichUncle was created.

9. Following an attempt to secure greater financing for its equity financing model, iempower started exploring the traditional student loan market. In 2004, Khan and Garg began to migrate their business model to focus on the traditional private student market. In July 2004, iempower entered a reverse public merger with Pacific Technologies, a CD manufacturing business. Upon completion of the takeover, iempower changed its name to MRU Holdings.

10. In February 2005, MRU Holdings obtained a $165 million credit facility from Nomura Securities for funding private student loans and in May 2005, MRU Holdings began offering private student loans under the brand name MyRichUncle. MRU Holdings expanded its ability to offer loans, forming a guaranty agency to back loans.

11. In January 2006, MRU Holdings obtained a credit facility with Merrill Lynch Bank USA and also closed a $29 million PIPE equity offering from Merrill Lynch Private Equity Partners, Lehman Brothers, and several senior MBNA executives.

12. On February 12, 2007, MRU Holdings purchased Embark Corp., a provider of enrollment management services to colleges and universities, from The Princeton Review.

13. In March 2007, MRU Holdings announced their partnership with STA Travel to provide travel loans for study abroad.

14. In April 2007, MRU Holdings announced their partnership with The Princeton Review.

15. In June 2007, MRU Holdings closed its first securitization, issuing $200 million in principal amount of asset-backed securities.

16. In a letter dated September 18, 2008, NASDAQ notified the Debtor that based on its Annual Report for the period ended June 30, 2008 NASDAQ had determined that the Debtor's stockholders' equity did not comply with the minimum stockholders' equity requirement for continued listing on NASDAQ.

17. In 2008, MyRichUncle suspended their student loan program after becoming unable to acquire capital to meet the demand for loans.

**New York County Forfeiture Proceedings**

18. In November, 2008, the New York County District Attorney filed New York County Indictment No. 05753/2008 (the "Indictment") charging Troy Anthony Hill ("Hill"), a former employee of the Debtor, with grand larceny and money laundering with respect to the embezzlement of the Debtor's funds.

19. On November 25, 2008, the Honorable Martin Shulman issued a Temporary Restraining Order arising from the indictment restraining the assets of Hill, as well as the assets of non-criminal defendant Robbin Coachman ("Coachman") and criminal corporate defendants TR Investment Group, LLC, TR Investment Group I, LLC, and TR Investment Group II, LLC.

20. Upon information and belief, on or about November 24, 2009, Criminal Defendants Hill, TR Investment Group, LLC, TR Investment Group I, LLC, and TR Investment Group II, LLC, entered into a forfeiture agreement before Justice Shulman in New York Supreme Court, Part 41, in satisfaction of the Indictment and forfeited to the Debtor's estate the proceeds, substituted proceeds and/or instrumentalities of the crime.

21. In addition, on or about November 27, 2009, Coachman entered into a forfeiture agreement forfeiting to the Debtor's estate, the proceeds, substituted proceeds and/or

instrumentalities of crime, pursuant to CPLR Article 13-A, and certain frozen assets owned by her alone or jointly with Hill, and/or any of the criminal corporate defendants.

22. Accordingly, these defendants forfeited to the Debtor's estate cash and personal and real property assets including vehicles, jewelry, handbags and two real property assets – the Property and a residential property located at 158 Wayne Street, Unit 216A, Jersey City, New Jersey.

23. By order dated June 1, 2010, this Court approved the Trustee's retention of McGuire & Associates ("McGuire") to appraise the Property. McGuire appraised the value of the Property to be $175,000.00.

24. By order dated July 30, 2010, this Court approved the Trustee's retention of MYC & Associates ("MYC") as real estate brokers to market the Property.  Since that date, MYC has actively marketed the Property. The Trustee originally listed the Property for $199,000.00.

25. After being on the market for almost one year, Lok offered to purchase the Property for ONE HUNDRED THOUSAND UNITED STATES DOLLARS (US$100,000.00) (the "Purchase Price").

26. Given the length of time the Property has been actively marketed, the Trustee believes that acceptance of the Purchase Price, which is subject to higher and better offers, is in the estate and creditor's best interest.

27. The Trustee has received a 10% deposit from Lok in the amount of TEN THOUSAND UNITED STATES DOLLARS ($10,000) toward the Purchase Price.  Lok has signed the Purchase Agreement.

## PROTECTIONS AFFORDED TO THIRD PARTIES

28. In order to ensure the sale of the Property to Lok is conducted fairly and open to the widest possible audience, measures have been taken to ensure the fairness of the sales process, including (1) making the sale subject to higher and better offers; and (2) not offering any special bid protections to Lok. Notably, given the significant amount of time the Property has been on the market and the reductions in the asking price, it is likely that there is a limited market for the Property and Lok may be in the best position to offer the highest possible value for the Property.

29. The Trustee, however, seeks to realize the highest return possible for the Property and will provide information regarding the Property to anyone who inquires.

## THE PROPOSED SALE

30. The Trustee's obligation is to, *inter alia*, maximize the value of the Property for the benefit of the estate. The Trustee has determined that the sale of the Property will benefit this estate because Lok's offer will provide fair value for the Property under the circumstances and, in any event, is subject to higher and better offers.

31. As noted herein, the sale to Lok will be subject to higher and better offers received by the Trustee at or prior to an auction scheduled to be held at the offices of Gazes LLC on November 30, 2011 at 11 a.m. (the "Sale"). Any party interested in bidding on the Property at the Sale are required to provide to the Trustee a 20% deposit on or before the Sale and evidence of its financial ability to consummate a purchase of the Property at the bid and /or bids offered at the Sale.

## SALE OF THE PROPERTY IS IN THE BEST
## INTERESTS OF THE DEBTOR'S ESTATE

32. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he Trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The standard for whether a sale of property should be approved is a trustee's business judgment, taking into account (1) maximization of the value of the estate property and (2) avoidance of undue risk. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d. Cir. 1983) (a judge determining a 363(b) application must expressly find from the evidence presented before him at the hearing a good business reason to grant the application); *In re Bakalis,* 220 B.R. 525, 532 (E.D.N.Y. 1998) ("[a] duty is imposed upon the trustee to maximize the value obtained from a sale, particularly in liquidation cases. . . . A trustee must also seek to avoid undue risk, particularly when dealing with money of the estate").

33. The Trustee believes that a sale is in the best interest of the estate and creditors of the estate because the proceeds of the sale of the Property will be available a distribution to estate's creditors.

34. The Trustee believes that the Purchase Price is fair and reasonable.

35. For the foregoing reasons, this Court should authorize the Trustee to sell the Property to Lok subject to higher and better offers pursuant to section 363(b) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1).

## SALE IS SUBJECT TO HIGHER AND
## BETTER OFFERS AND NOTICE THEREOF

36. After the conclusion of the Sales Auction, the Trustee will ask this Court at a hearing on December 14, 2011 at 10:00 am to approve the sale of the estate's right, title and

interest in and to the Property to the successful purchaser pursuant to section 363(b) of the Bankruptcy Code and Rules 2002 and 6004 of the Bankruptcy Rules. 11 U.S.C. § 363(b); Fed. R. Bankr. P. 2002 and 6004.

37.  The Trustee does not believe that publication of the Notice of Sale will be cost effective nor would it generate any additional interest given the length of time the Property has been on the market. The Trustee believes that the best and most cost effective method of noticing the Sale would be by serving by first class mail a conformed copy of the Sales Procedures Order and this Application with exhibits on (i) the United States Trustee for the Southern District of New York, attention: Nazar Khodorovsky, Esq., (ii) Counsel to the Debtor, (iii) those individuals and entities that filed a notice of appearance, if any, (iv) the New York State Department of Taxation and Finance and the Internal Revenue Service, and (v) any entities who expressed an interest in acquiring the Property. The Trustee proposes to mail the Notice of Sale only to all creditors who have filed a proof of claim.

38.  The Trustee asserts the foregoing notice satisfies the requirements of Rule 2002 of the Bankruptcy Rules. To the extent it does not, the Trustee asserts that any modification thereof is warranted under the circumstances and asks the Court to approve the form and manner of the notice.

39.  Although the Trustee submits that the value to be provided by the Sale is fair and reasonable, the Bid Terms and the Sale will assure that the Debtor's estate will receive the highest or best value available. Accordingly, the Trustee believes that the Notice of Sale and Bid Terms should be approved.

## NO OTHER REPRESENTATIONS BY TRUSTEE REGARDING PROPERTY

40. The Trustee makes no representations regarding the Property. The Property will be sold "as is" and "whereas" with no representations, legal or equitable, of any kind. At the closing of title, the Trustee will deliver to the successful buyer a properly executed deed as well as any other information in the Trustee's possession or control or reasonably requested by the buyer's title insurance company.

## SALE OF THE PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES IS APPROPRIATE

41. The Trustee further submits that it is appropriate that the Property be sold free and clear of liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, or interests to attach to the sale proceeds thereof. 11 U.S.C. §§ 363(f). Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*

42. To facilitate the sale of the Property, the Trustee seeks authorization to sell such rights free and clear of any and all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the net proceeds of such sale with the same rights and priorities

therein and the costs of Sale to be paid at the closing so the successful buyer's title insurer will issue title/insurance.

43. Because section 363(f) is stated in the disjunctive, when selling property of the estate, it is only necessary to meet one of the five conditions of that section. 11 U.S.C. § 363(f); *see Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive. Therefore, if any of the five conditions of section 363(f) are met, the trustee has the authority to conduct the sale free and clear of all liens").

44. Here, the Trustee has satisfied section 363(f)(3) of the Bankruptcy Code because the Purchase Price is in excess of the liens, claims and encumbrances that currently attach Property. The Trustee has been informed that approximately $10,000.00 in liens, claims and encumbrances as well as other amounts which need to be paid at the closing of the Sale attach to the Property; these amounts are below the Purchase Price. In addition, the Trustee proposes to satisfy such liens, claims and encumbrances from the sales proceeds at closing other than the Trustee's professionals' fees and expenses arising by reason of the sale, which are subject to further application to this Court.

45. Thus, the sale of the Property free and clear of liens, claims and encumbrances satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

## **GOOD FAITH PURCHASER**

46. Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good faith purchaser. 11 U.S.C. § 363(m). Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such

entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

*Id*.

47. Although the Bankruptcy Code does not define "good faith purchaser," the United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that the phrase "encompasses one who purchases in 'good faith' and 'for value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147. Further, the Third Circuit has recognized that the type of misconduct that would destroy a purchaser's good faith status involves "'fraud, collusion between the purchaser and other bidders or the Debtor, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

48. Here, the terms and conditions of the sale of the Property were negotiated by the Trustee at arms-length and in good faith. Accordingly, the Trustee requests the Court determine the successful buyer is acting in good faith and entitled to the protections afforded to good faith purchasers under section 363(m) of the Bankruptcy Code. 11 U.S.C. § 363(m).

## SECTION 363(B)(1) COMPLIANCE

49. The Property does not contain "personally identifiable information" within the meaning of section 363(b)(1) of the Bankruptcy Code because the Property is the estate's right, title and interest in the Property. Accordingly, section 363(b)(1) of the Bankruptcy Code relating to the sale of "personally identifiable information" is not implicated by the sale of the Property.

## THE BIDDING PROCEDURES

50. As part of the bidding procedures (attached as Exhibit <u>B</u> hereto), the Trustee will request competing bids for the Property greater than the Purchase Price. In addition, the bidder must provide the Trustee with a certified check prior to or at the Sale Auction. Such check shall be in an amount equal to 20% of the bidder's intended offer. The Trustee respectfully submits

that the bidding procedures set forth in the Bid Terms are reasonable and will ensure an orderly Sale.

51. The terms and conditions of the Sale shall include, among other things, the following:

   (a) The Property will be sold (i) "as is" and "whereas" with no representations, legal or equitable, of any kind and (ii) free and clear of any liens, claims, and encumbrances, and such liens, claims and encumbrances to attach to the proceeds of the sale of the Property only.

   (b) At the Sale, any person or entity, including the original purchaser, intending to bid for the Property (the "Offeror") is required to submit a certified check equal to 20% of the offer (the "Deposit") which is non-refundable should the Offeror fail to close for any reason, with the Trustee, and the estate reserving all other rights and remedies.

   (c) The balance of the purchase price of the Property shall be paid by the successful Offeror (the "Purchaser") by a certified check to or at the direction of the Trustee at the closing.

   (d) Written offers shall be deemed made at the opening of the Sale. All offers made or deemed to be made at the Sale shall remain open and irrevocable until thirty days after entry of an order approving the Sale. In the event the order approving the Sale is subject to a stay of the Court, the offer shall remain open until such time as either the stay is vacated or the order becomes a final order, whichever is earlier.

   (e) The Trustee, at or before the Sale, may modify the bid and sale terms and impose such other terms and conditions as he determines to be in the best interest of the estate and its creditors.

   (f) The Purchaser must execute the purchase agreement annexed to the Motion authorizing the sale at the auction, and the closing shall take place on the eleventh day after entry of the order approving the Sale or at such other time as the Trustee in his sole discretion decides. A hearing to approve the sale will be held on December 14, 2011 at 10:00 a.m. before the Hon. Arthur J. Gonzalez, Chief United States Bankruptcy Judge.

   (g) All bidders must include evidence satisfactory to the Trustee of such bidder's financial ability to close a purchase of the Property unless the Trustee directs otherwise. If a bid is made more than two business days prior to the Sale, the Trustee will notify the

bidder within two business days of receipt whether the bid, including the 20% deposit and evidence of the bidder's financial ability to close, is a qualifying bid, or whether additional evidence is required.

52. The actual bidding at the Sale will be transcribed or videotaped to ensure a record. Each bidder at the auction is required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

53. A hearing on the Sales Procedures including the Bidding Procedures will be held on October 26, 2011 at 9:30 a.m. Any objections to the Sales Procedures shall (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules of this Court; (iii) set forth the name of the objectant; (iv) state with particularity the legal and factual basis for such objection; and (v) be filed with the Bankruptcy Court through the Bankruptcy Court's electronic filing system at the ECF/PACER link at www.nysb.uscourts.gov, with a copy delivered to the Chambers of the Hon. Arthur J. Gonzalez, at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004, and (vi) served upon (a) counsel to the Trustee, Gazes LLC, 32 Avenue of the Americas, 27th Floor, New York, New York 10013, Attention: Ian J. Gazes and (b) the United States Trustee at 33 Whitehall Street, 21st Floor, New York, New York 10004, Attention: Nazar Khodorovsky, such that it is filed and received in hand no later than October 19, 2011 at 4:00 p.m.

## COSTS RELATED TO THE SALE

54. The Trustee requests authority to pay any taxes arising by reason of the sale and the court reporter costs on or about the closing date. Such expenses will not include any professional fees, expenses of those professionals and Trustee commissions.

## FORM OF PURCHASE AGREEMENT

55. The Purchase Agreement between the Trustee and Lok for the sale of the Property is attached as Exhibit E hereto and the Trustee seeks approval thereof. The successful bidder

14

shall enter into the Purchase Agreement with the Trustee at the auction Sale in no less favorable terms.

## SHORTENED NOTICE OF PROPOSED SALES PROCEDURES; STANDARD NOTICE OF SALE AND HEARING CONFIRMING SALE

56. The Trustee will serve this Motion (with exhibits) on (i) the United States Trustee for the Southern District of New York, (ii) Counsel to the Debtor, (iii) those individuals and entities that filed a notice of appearance, if any, (iv) the New York State Department of Taxation and Finance and the Internal Revenue Service, and (v) any entities who expressed an interest in acquiring the Property.

57. Regarding approval of the sale, section 363(b)(1) of the Bankruptcy Code provides that the trustee may use, sell, or lease estate property "after notice and a hearing." 11 U.S.C. § 363(b)(1). Notice of a proposed use of estate property under section 363(b)(1) of the Bankruptcy Code shall be given on not less than twenty days notice by mail. *Id*.; s*ee also* Fed. R. Bankr. P. 2002(a)(2) and 6004(a).

58. Upon entry of the annexed proposed Sales Procedures Order following the hearing on August 10, 2011 the Trustee will serve by first class mail (a) a conformed copy of the Sales Procedures Order and the Motion with Exhibits (including the Notice of Sale and Notice of Sale Confirmation Hearing) upon (i) the United States Trustee for the Southern District of New York, (ii) Counsel to the Debtor, (iii) those individuals and entities that filed a notice of appearance, if any, (iv) the New York State Department of Taxation and Finance and the Internal Revenue Service, (v) any entities who expressed an interest in acquiring the Property, and (vi) all parties who have filed a notice of appearance and requested service of copies of papers; and by first class mail (b) a copy of the Notice of Sale upon each creditor scheduled by the Debtor and any entities that have filed a proof of claim.

59. By reason thereof, the Trustee respectfully submits that the service of notice as described herein is appropriate under Rules 2002 and 6004(a) of the Bankruptcy Rules and warranted under the circumstances presented. Fed. R. Bankr. P. 2002 and 6004(a). The Trustee requests that this Court find that due and sufficient notice of the Motion has been given to interested parties.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the Sales Procedures Order, substantially in the form attached as Exhibit A at the conclusion of the Sales Procedures Hearing and at the conclusion of the Sale Confirmation Hearing enter the Sales Confirmation Order, substantially in the form attached as Exhibit D approving the sale, and grant such other and further relief as is just and proper.

Dated: New York, New York
September 30, 2011

Respectfully submitted,

GAZES LLC

By: /s/ Ian J. Gazes_____
Ian J. Gazes
32 Avenue of the Americas, 27th Floor
New York, New York 10013
(212) 765-9000

*Attorneys for Ian J. Gazes, Chapter 7 Trustee*
*of Estate of MRU Holdings, Inc.*